1:23 MJ 4166

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Adam W. Anderson, a Task Force Officer with the Drug Enforcement Administration ("DEA"), United States Department of Justice, being first duly sworn, depose and state underoath as follows:

1. This affidavit is made in support of a criminal complaint against De'Marjae Charvon GOGGANS (hereinafter "GOGGANS"), charging that on or about June 2, 2023, GOGGANS committed the following federal offense:

    a. Possession with Intent to Distribute cocaine, in violation of Title 21, United States Code, Section 841(a)(1);

    b. Possession with Intent to Distribute MDMA, in violation of Title 21, United States Code, Section 841(a)(1);

    c. Possessing a firearm in furtherance of drug trafficking, in violation of Title 18, United States Code, Section 924(c)(1).

## TRAINING AND EXPERIENCE

2. I am a State Trooper with over sixteen years of law enforcement experience and have been employed by Ohio State Highway Patrol since April 2017. I am currently assigned as a Task Force Officer (TFO) to the Drug Enforcement Administration (DEA) Cleveland Office and have been so assigned since November 2020. I was employed by the City of Wooster Police Department, Wayne County, Ohio, prior to being employed as a State Trooper.

3. I have Master of Science Degree in Criminal Justice, concentrating in management and administration. I have received specialized training at the Ohio State Highway Patrol Trooper Academy, the Medina County Law Enforcement Training Academy, and the Ohio Peace Officer Training Academy (OPOTA). I am currently certified as a State Trooper and am certified as an OPOTA Instructor. I have received training regarding the identification of controlled substances

1

and the operation of drug trafficking individuals and organizations. I have also been involved in investigating numerous individuals involved in the manufacturing, distribution, and use of controlled substances.

4. I have successfully conducted investigations that have resulted in drug traffickers' arrests and the seizure of significant quantities of drugs, money, and weapons. I have further conducted drug traffickers' surveillance operations and have interviewed numerous persons personally involved in the sale, transport, and use of narcotics. Through this training and experience, I have become familiar with and have gained a thorough understanding of the methods, manner, and means used by individuals engaged in the unlawful manufacturing, trafficking, transportation, and use of controlled substances.

5. I have gained knowledge that members and co-conspirators of complex drug trafficking organizations utilize various veiling methods and engage in activities in efforts to thwart the efforts of law enforcement personnel. In particular, members of drug trafficking organizations commonly utilize multiple cellular phones and subscribe said phone numbers in the names of fictitious people or relatives. Members also utilize numerous vehicles, and exchange vehicles at irregular intervals, with said vehicles being registered to relatives, fictitious companies, or in the names of invented individuals. I also have experience recognizing members of drug trafficking organizations engaging in driving maneuvers that are designed to assist criminals in the possible identification of law enforcement personnel who are engaging in surveillance operations. I also know drug traffickers use multiple residences in an effort to thwart law enforcement by separating the fruits of the crimes, to different locations. I know it is common for drug traffickers to use apartments, in order to blend in with multiple other residences, making it difficult for law enforcement to locate the location. All of these activities are done in the hope that criminal activities will be disguised.

6. Based on my training and experiences in other investigations, I have conducted numerous analyses of billing and toll records for telephones used by drug traffickers. I know drug trafficking is often furthered by using multiple cellular phones, multiple insulated contacts, and pre-paid cellular phones, which is also known as compartmentalization. The use of the telephones in this manner is designed to help avoid detection by law enforcement.

7. I know based upon training and experience that drug trafficking and money laundering organizations routinely use a number of other operational techniques, designed and implemented to achieve two goals: first, the successful distribution of controlled substances and the subsequent collection of the proceeds of that illegal activity; and second, the minimization of the exposure of organization members, particularly those operating in management roles, from investigation and prosecution by law enforcement.

8. I have participated in multiple drug cases, some of which have been Title III investigations involving drug trafficking activities and have become familiar with the patterns of activity of drug traffickers, the types and amounts of profits made by drug dealers, and the methods, language, and terms that are used to disguise the source and nature of the profits from their illegal drug dealings.

9. I also know from training and experience that drug traffickers periodically change, or "drop," their telephones and/or telephone numbers in an attempt to avoid law enforcement interception of their conversations. Moreover, it is my experience that narcotics distributors purposefully use multiple communication devices (for example, cellular telephones) to keep law enforcement from understanding the full scope of their own and/or their organization's illicit conduct, in the event that their communications are being intercepted. I also know that drug traffickers frequently use text messaging to communicate with other traffickers in an effort to thwart law enforcement interception of communications.

10.  Unless otherwise noted, wherever in this Affidavit, I assert a statement was made, my observations provided the information, or another special agent or law enforcement officer, or witness who had either direct or hearsay knowledge of that statement to whom the I or others have spoken or whose reports I have personally read and reviewed. This Affidavit does not contain every piece of information known to Affiant and otherinvestigators, but rather only information sufficient to establish probable cause to support the requested warrant.

**PROBABLE CAUSE**

11.  In October of 2022, Drug Enforcement Administration (hereinafter, "DEA") Cleveland Investigators initiated an investigation into a drug trafficking organization following intelligence received from a credible and reliable Confidential Source[1] (hereinafter, "CS").

12.  During this investigation DEA investigators identified the residence of 951 Stevenson Road, Cleveland, Ohio (hereinafter, "TARGET RESIDENCE" or "TR"). The TR is listed under the Cuyahoga County Auditor property records website as parcel #115-29-069, owned by Kevin HILL. According to the record, Land use for 951 Stevenson Road, Cleveland, Ohio, 44110, indicates a 1-family plotted lot, but zoning use indicates a "two family" residence.

13.  In late May 2023, the CS was invited over to the TR. During this meeting the CS went in the side door of the TR. Once inside the residence, the CS observed marijuana being processed for sale at the kitchen table, approximately (10) pistols on a chair by the front door, marijuana packaging, a small brown postal box with a "kilo" of suspected cocaine, and approximately ten pounds of marijuana on the floor. The CS stated one of the occupants inside of the residence opened a plastic container containing another kilo of suspected cocaine, which was being processed for distribution. The CS inquired about buying a couple of ounces of

---

[1] The CS has a misdemeanor criminal history of attempted trafficking in drugs and operating a motor vehicle while under the influence. The CS is currently working for members of the Cleveland District Office in consideration of a pending drug trafficking and money laundering charges in the Northern District of Ohio.

4

"coke" (cocaine) in the near future and was told, "we serving over here." In my training and experience, they were telling the CS that they are serving drugs and thus agreeing to CS's request to sell to CS at a later date.

14.  On May 30, 2023, DEA investigators conducted a trash pull operation at the TR. Four trash cans were located on the tree lawn of 951 Stevenson Road, Cleveland, Ohio. At approximately 7:30 a.m., the four trash cans' contents were examined, collected, and taken to a secured location to process the items.

15.  During examination of the contents, the following items of evidentiary value were located:

- Several plastic baggies containing a white powdery substance[2];
- One zip lock plastic pound size bag containing a green leafy substance, suspected marijuana, one vacuum sealed plastic bag labeled, "QP Path Soap $125" containing a green leafy substance of suspected marijuana;
- Several sets of plastic gloves.

16.  As a result of this eight-month investigation, Task Force Officer (TFO) Christopher Giordano applied for a state search warrant for the front of the TR. This warrant was granted on May 31, 2023, by Cuyahoga County Common Pleas Judge Steven Gall.

17.  On June 2, 2023, DEA investigators executed the state search warrant on the front apartment of TR. Upon entry of the TR, DEA investigators determined the TR, which was previously identified as a two-unit complex, was only a single residence, and there was access to both the front and the rear unit without separation in the living space. During the search of TR, GOGGANS was located laying on a couch in the rear of the residence. Beside GOGGANS, in

---

[2] This item was sent to the Cuyahoga County Regional Forensic Science Lab (CCRSFL) for testing, which revealed positive results for cocaine.

plain view, were two bags of multi-colored pills of suspected meth or fentanyl, suspected marijuana, a scale, ammunition and a set of keys. Within GOGGANS' arm reach was a safe, and during questioning GOGGANS stated the key to the safe was on his key ring and there was approximately $200.00 inside of the safe.

18. After the residence was secured, and GOGGANS was detained, DEA investigators stopped the search of the residence, and TFO Giordano applied for a search warrant for the entire residence. On June 2, 2023, at approximately 8:44 a.m., the search warrant for the entire TR was signed by Cuyahoga County Common Pleas Judge Kevin Kelley.

19. During the search of the residence, the following items were located:

- Approximately 353 grams of cocaine[3];
- Approximately 262 grams of MDMA[4];
    - Located on table next to GOGGANS;
- Six firearms: (Four pistols, a rifle and a sawed-off shotgun);
    - One pistol located in safe near GOGGANS, who possessed the key;
- Approximately 413 grams of marijuana;
- Numerous scales and drug packaging material;

20. GOGGANS was read his Miranda Rights and an interview was conducted by DEA Investigators following GOGGANS' arrest. During this conversation, GOGGANS stated he had knowledge of the pills and had been living at the residence for the last couple weeks.

## CONCLUSION

---

[3] A preliminary test was conducted on this item, revealing a positive result for cocaine.
[4] A preliminary test was conducted on this item, revealing a positive test for MDMA

21. Based on the facts set forth in this affidavit, I submit there is probable cause to believe that on or about June 2, 2023, in the Northern District of Ohio, De'Marjae Charvon GOGGANS committed the offense of Possession with Intent to Distribute cocaine, in violation of Title 21, United States Code, Section 841(a)(1), Possession with Intent to Distribute MDMA, in violation of Title 21, United States Code, Section 841(a)(1), and Possessing a firearm in furtherance of drug trafficking, in violation of Title 18, United States Code, Section 924(c)(1). Affiant, therefore, requests that this Court issue a criminal complaint and arrest warrant for De'Marjae Charvon GOGGANS.

Adam W. Anderson
Task Force Officer
Drug Enforcement Administration

This affidavit was sworn to by the affiant by telephone after a PDF was transmitted by email, per Federal Rule of Criminal Procedure 4.1; 41(d)(3)

JONATHAN D. GREENBERG
UNITED STATES MAGISTRATE JUDGE
06-05-2023